**Matter of New York Coll. of Podiatric Med.**

2024 NY Slip Op 34164(U)

November 26, 2024

Supreme Court, New York County

Docket Number: Index No. 157116/2024

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. PAUL A. GOETZ**                          PART                    **47**

_Justice_

-----------------------------------------------------------------------------X

In the Matter of the Application of

NEW YORK COLLEGE OF PODIATRIC MEDICINE

For Approval to Transfer Substantially All Assets to
Touro University Pursuant to N.Y. Not-for-Profit
Corporation Law Sections 510 and 511

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 157116/2024 |
| **MOTION DATE** | 08/05/2024 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 33, 35, 36, 37, 38
were read on this motion to/for                     MISC. SPECIAL PROCEEDINGS                .

New York College of Podiatric Medicine (NYCPM) petitions for approval to transfer

substantially all its assets to Touro University (Touro) pursuant to Not-for-Profit Corporation

Law (NPC) §§ 510 and 511.

NYCPM operates campus facilities located at 53 E 124th Street, New York, NY 10035

(NYSCEF Doc No 8), and is a corporation providing instruction to students to qualify them for

the practice of podiatry, including academic programs leading to a doctoral degree in podiatric

medicine (NYSCEF Doc No 1 ¶¶ 4, 6). Touro is a 26 USC § 501(c)(3) Regents-chartered

educational institution that offers various professional degree-granting programs under its

university system umbrella (_id._ ¶¶ 7, 26). NYCPM seeks to the transfer substantially all of its

assets to Touro, resulting in NYCPM becoming an internal division of Touro and ceasing to be

an independently licensed and accredited institution (_id._). To that end, the parties[1] entered into a

---

[1] "The parties" refers to NYCPM, Touro, and The Foot Clinics of New York ("Foot Clinic"), a clinical teaching
affiliate of the Corporation. As part of the transaction agreement, Foot Clinic will amend its governance structure
such that Touro will become its sole member upon the closing of the transaction.

**157116/2024   NEW YORK COLLEGE OF PODIATRIC MEDICINE vs.**                          **Page 1 of 6**
**Motion No.  001**

transaction agreement dated April 20, 2021 (NYSCEF Doc No 5) and amended on September 19, 2022 (NYSCEF Doc No 6) (the transaction agreement).

The assets to be transferred include (*id.* ¶ 8): (1) tangible personal property, including furniture, fixtures, office equipment, PCs, laptops, lab equipment and passenger cars valued at $946,700 (NYSCEF Doc No 16); (2) intellectual property; (3) real property consisting of the campus facilities at 53 East 124th Street, valued at $42 million (NYSCEF Doc No 15); (4) leases or facility licenses; (5) investments in marketable securities, good will, legacy; (6) all of the membership interests of Podia Insurance Limited, a Cayman Islands insurance captive owned by NYCPM; and (7) contracts, which collectively represent the educational operation being transferred (NYSCEF Doc No 10). The transaction does not involve the payment of any monetary consideration, however, Touro agrees to "assume and [] to pay, perform and discharge the liabilities and obligations of NYCPM that arose from the operation of NYCPM, known or unknown, prior to the Closing," excluding those liabilities or obligations "arising from a breach, default, or violation of any representation or warranty by NYCPM under the Transaction Agreement; violations of laws by NYCPM; and certain labor, employment and benefit-related actions or violations []which shall be retained by NYCPM for a period of five years post-closing" (NYSCEF Doc No 1 ¶ 17; NYSCEF Doc No 37 ¶ 3).

"Ordinarily, courts are not involved in the oversight or approval of contracts [but the] law is different in the case of not-for-profit entities [because they] do not have shareholders to whom profits are distributed," and therefore lack "market devices to ensure the efficacy of contracts and regularity of operations (*64th Assocs., L.L.C. v Manhattan Eye, Ear & Throat Hosp.*, 2 NY3d 585, 589-90 [2004]). NPC §§ 510 and 511 are therefore "designed to protect the members of a not-for-profit corporation from unwise bargains and the wrongful use of the corporation's

157116/2024   NEW YORK COLLEGE OF PODIATRIC MEDICINE vs.
Motion No.  001

Page 2 of 6

property, and to assure both the public's interest in the proper distribution of the corporations' assets and the satisfaction of the officers' and directors' fiduciary obligation" (Rose Mary Bailly et al, Practice Commentaries, McKinney's Cons Laws of NY, Book 37, NPC § 510). These statutes provide that a "disposition of all, or substantially all, the assets of a corporation may be made upon such terms and conditions and for such consideration . . . as may be authorized" by a majority vote of the board's corporation (NPC § 510); and that the corporation must "present a verified petition to the supreme court" setting forth, *inter alia*, a description of the assets to be transferred, the consideration to be received, and the terms of the sale (NPC § 511).

Applications pursuant to NPC §§ 510 and 511 often involve the sale of assets between two distinct entities, where the seller is a not-for-profit corporation and the buyer is a for-profit corporation (see, e.g., *Dore v Wormley*, 690 F Supp 2d 176, 181 [SDNY 2010]; *Matter of Prospect Hgts. Hous. Dev. Fund Corp.*, 38 AD3d 781 [2nd Dept 2007]; *Rose Ocko Found., Inc. v Lebovits*, 259 AD2d 685 [2nd Dept 1999]). The nature of the instant proposed transfer is atypical in that, by way of the transaction agreement, the parties intend that NYCPM become a part of Touro's school system, named the "New York College of Podiatric Medicine of Touro University" (NYSCEF Doc No 1 ¶ 7). Additionally, as previously noted Touro is itself a USC § 501(c)(3) Regents-chartered educational institution (*id.* ¶ 6). Therefore, while "judicial scrutiny [is appropriate to] protect [NYCPM] against board actions that might be adverse to the entity's well-being" (*64th Assocs., L.L.C.*, 2 NY3d at 591), the proposed transfer under review here does not raise the usual concerns that a not-for-profit corporation is proposing an imprudent transfer of assets.

Pursuant to NPC § 510(a)(1), NYCPM submitted resolutions, unanimously adopted by its board, recommending the proposed transfer of assets (NYSCEF Doc Nos 23-26 [NYCPM's

[* 3]

board's approval of the first transaction agreement at a meeting held on September 24, 2021; NYCPM's board's approval of the amended transaction agreement at a meeting held on October 21, 2022; NYCPM's board's confirmation of its approval at a meeting held on February 24, 2023; and Foot Clinic's board's confirmation of its approval at a meeting held on February 24, 2023]). Additionally, NYCPM obtained the Attorney General's approval of NYCPM's proposed order (NYSCEF Doc No 37, p. 5).

NPC § 511(d) requires that the court be satisfied that the "consideration and the terms of the transaction are fair and reasonable" and that the "purposes of the corporation . . . will be promoted." In support of its petition, NYCPM avers that, in line with the national trend for podiatric schools, it has seen decreased enrollment in recent years, and this decrease, "combined with the challenges NYCPM faces as an independent school[,] means that it has a limited pool of tuition and revenue from which to cover all of its operational expenses (NYSCEF Doc No 1 ¶ 24). While NYCPM has some significant assets, it states that the Foot Clinic's "operations run at a substantial deficit" (*id.* ¶ 20), and that NYCPM has "had to draw on funds from its reserves to cover cash flow shortfalls in its operational accounts" (*id.* ¶ 25; see also NYSCEF Doc No 18 [NYCPM's audited financial statement for the fiscal year ending on June 30, 2023]). Notably, "NYCPM is the last stand-alone podiatric school in the country," as "each of the other accredited independent podiatric schools have become part of multi-discipline educational institutions, giving those schools access to greater resources, allowing them to streamline their administrative operations, modernize their operations, and increase opportunities for cross-collaboration across professional schools" (*id.* ¶ 23). In transferring substantially all of its assets to Touro, NYCPM seeks to similarly benefit from joining a larger institution, which will allow it "to reduce its administrative overhead, thereby allowing the school to direct more of its resources towards

157116/2024   NEW YORK COLLEGE OF PODIATRIC MEDICINE vs.
Motion No.  001

Page 4 of 6

4 of 6

[* 4]

accomplishing its educational mission" (*id.*). It identifies Touro as a school with "a history of successfully bringing various professional degree-granting programs under its university system umbrella" (*id.* ¶ 26) and which is "committed to providing the financial, operational, and human resources services necessary to strengthen the podiatric school, cover its operational costs, and bring the school back to its stature as the preeminent podiatric school in the nation" (*id.* ¶ 25).

Based on the foregoing, NYCPM has demonstrated its compliance with NPC § 510, and that the proposed transaction is fair and reasonable and will promote NYCPM's purposes pursuant to NPC § 511. Accordingly, it is

ORDERED that NYCPM's application for approval for the transfer of substantially all of its assets to Touro as set forth in the transaction agreement (NYSCEF Doc No 5) and amendment thereto (NYSCEF Doc No 6) is granted; and it is further

ORDERED that the transferred assets are to be used to create an internal division of Touro University to be called the New York College of Podiatric Medicine of Touro University ("Podiatric College"); and it is further

ORDERED that the restricted assets transferred from the NYCPM to Touro shall continue to be used by Touro in accordance with the same original restricted purposes; and it is further

ORDERED that the Attorney General shall be served with a copy of the signed court order and shall receive notice that the transaction has been completed upon closing, or that the transaction has been abandoned, or that it is still pending 90 days from the date of this order; and it is further

ORDERED that a copy of the final closing statement for the transaction shall be provided to the Attorney General within 30 days of the closing date; and it is further

ORDERED that there shall be no change to the parties, or the terms of the transaction

agreement as amended without further court approval.

20241126163114PG0ETZ152A44A4E75BE4D359DEE94DB2F38094E

**11/26/2024**
**DATE**

**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 6]